1  KATHLEEN E. WELLS (SBN 107051)
   3393 Maplethorpe Lane
2  Soquel, CA  95073
   Telephone:      (831) 475-1243
3  Facsimile:      (831) 475-1103
   Email:          lioness@got.net
4
   AARON LODGE (SBN 220670)
5  1414 Soquel Avenue, Suite 222
   Santa Cruz, California  95062
6  Telephone:      (831) 426-3030
   Facsimile:      (831) 350-6030
7  Email:          ALodge@teachjustice.com

8  Attorneys for plaintiffs, HALEY WRIGHT, JESSICA WRIGHT, and EMILY WRIGHT

9

10              UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12              SAN JOSE DIVISION – ECF PROGRAM

13

| | |
|---|---|
| HALEY WRIGHT, EMILY WRIGHT, and JESSICA WRIGHT,<br><br>         Plaintiffs,<br><br>         v.<br><br>CITY OF SANTA CRUZ,  COUNTY OF SANTA CRUZ; MARK YANEZ, TATE HOWE, KENNY BESK, ANTHONY PARKER.  BRENDAN OMORI, JOHN FERNANDEZ, DRUG ENFORCEMENT ADMINISTRATION,  JOSHUA SINGLETON,   TWENTY UNKNOWN FEDERAL, CITY AND COUNTY INDIVIDUALS and AGENCIES,,<br><br>         Defendants. | CASE NO.  13-01230 PSG<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>_____ |

24

25              <u>**BRIEF SYNOPSIS OF THIS CASE**</u>

26         1. This action arises from the Drug Enforcement Administration (DEA)

27  communicating with the Santa Cruz County Sheriff's Office, and the Santa Cruz Police

28  Department (SCPD) and providing information about the impending indictment and arrest of

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

individuals who were members of a large Mexican drug cartel.  One name mentioned  as a member of the cartel was a person  named "Haley."  With no other information other than a hunch, the defendants jumped to the conclusion that the person they wanted must be Haley Jane Wright ("HALEY"), the plaintiff herein, who had been known to one of the defendants because she had been arrested several years earlier on a charge of being under the influence. Defendants did not bother to check out or investigate or confirm in any way that she was the "Haley" wanted by the DEA.  In fact, HALEY had been clean and sober for many years and had no connection whatsoever to the drug cartel.  In fact the DEA had multiple surveillance photographs of the real (wanted) "Haley" who did not look anything like HALEY.  Defendants forged ahead and with absolutely no evidence linking HALEY to the drug cartel, nevertheless obtained an indictment against her alleging that she had done all of the things that the member of the drug cartel named Haley had done.  Thereafter, without a shred of evidence, still acting on the hunch that HALEY was their girl and with bogus indictment in hand, organized a SWAT team and conducted a full scale home invasion and arrest at the house of HALEY's parents where she was living along with her sisters JESSICA and EMILY, both of whom had recently born babies.

2.    On September 12, 2011, the defendant team entered HALEY's home, in full swat gear, and military desert camouflage, with multiple assault rifles and other guns drawn.  There were over twenty (20) officers in total, who approached the house with a large battering ram.  As the defendants entered her home, the SWAT team members held guns at very close range to all family members including HALEY's sisters, EMILY WRIGHT and her 6 month old baby and JESSICA WRIGHT and her 8 month old baby who were in the home at the time.  The family was completely terrorized.   After the mayhem and search, HALEY WRIGHT was handcuffed, placed in the back seat of a police car and arrested in full view of all of her neighbors.

3.   HALEY was then transported to jail in Santa Clara and incarcerated.  After about a week in jail, the first detention hearing was held and HALEY's grandparents were there to bail her out.  However, bail was denied.  There was no mention of the charges or evidence, only a statement that bail is denied.  After that, HALEY was held in jail for a total of 30 days despite her constant and vehement denial that she was the person they were looking for.  In her interviews and

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

-2-
FIRST AMENDED COMPLAINT FOR DAMAGES

interrogations, the defendants refused to listen to HALEY and failed and refused to investigate her claims of innocence despite the fact that they easily could have determined that HALEY was innocent of any charges by checking their own photographs, fingerprinting her, checking her DMV records and any other of many pieces of evidence the DEA had in their possession that would have revealed that she was not the drug cartel Haley.  In fact, the drug cartel Haley was really named "Hallie".  Even when the other women arrested informed defendants that HALEY was not Hallie, they failed to release her or even investigate further.

4.   Finally, after a month in jail, the defendants determined what they should have known from the beginning – that HALEY was not the person who was suspected of being in the drug cartel.   They released HALEY, but even still imposed serious restrictions on her release, as if she were a criminal.  They forbid her from leaving  the county, they forced her to check in as if she were on probation, and they threatened her with much stricter punishment (than normal) if she were to break the law in any way.

5.   More than two months after her arrest and incarceration, defendants finally completely dismissed all charges against her and released her from all restrictions.  By this time, however, HALEY had lost her job and her reputation.  Several news articles had been heavily publicized including a front page Santa Cruz Sentinel story, which highlighted the false and libelous accusation of her criminal involvement with a Mexican Drug Cartel.  HALEY suffered and continues to suffer severe emotional distress and is terrified of this false, but now public, view of her being involved with a violent gang.

6.   It should be noted and emphasized in this brief description of the complaint, that HALEY has never had any connection whatsoever with any of the other criminal defendants, nor had she been using, selling, or in any other contact with any illegal drug.  She was "clean and sober" and had been for an extended period of time.

## JURISDICTION AND VENUE

7.   This action arises under the Civil Rights Act of 1871 (42 U.S.C. Sections 1983 and 1988) and the Fourth and Fifth Amendments to the Constitution of the United States and under

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

-3-
FIRST AMENDED COMPLAINT FOR DAMAGES

California Civil Code Section 52.1 guaranteeing plaintiffs rights under the California Constitution. This Court has jurisdiction of the federal claims under 28 U.S.C. Section 1331, 1332, 1343(3) 1343(4), 2201, and 2202 and/ or by way of a *Bivens* action against the federal defendants under the Federal Tort Claims Act.  This court has pendent jurisdiction over the state claims herein.

8.   Venue is proper in the Northern District of California, San Jose Division, pursuant to 28 U.S.C. § 1391, in that the subject matter of this action arose in this district, all defendants are subject to personal jurisdiction in this district, and there is no district in which the action may otherwise be brought.

**PARTIES**

9.   Plaintiffs HALEY WRIGHT (hereinafter referred to as "HALEY"), EMILY WRIGHT, (hereinafter referred to as "EMILY"), and JESSICA WRIGHT (hereinafter referred to as "JESSICA"), are, and were at all relevant times, residents of Santa Cruz County in the State of California.

10. Defendants CITY OF SANTA CRUZ (hereinafter "CITY") , COUNTY OF SANTA CRUZ (hereinafter SANTA CRUZ COUNTY) AND COUNTY OF SANTA CLARA (hereinafter SANTA CLARA COUNTY) are political subdivisions of the State of California.

11.   Defendant JOSHUA SINGLETON was at all times relevant to this action employed by the Santa Clara County Sheriff's Department (SCCSD) and/or employed as a federal agent by the DRUG ENFORCEMENT ADMINISTRATION (hereinafter referred to as "DEA") on loan from the SCCSD.  SINGLETON was, in performing the unlawful and unconstitutional acts alleged herein, acting in his individual capacity while employed by the DEA and the SCCSD; and/or acting in his official capacity while employed by the DEA and SCCSD and, in performing all of the acts alleged herein, was acting under color of state law and federal law and the statutes, ordinances, regulations, customs and usages of the State of California and the United States of America.  The DEA is a federal agency dealing with enforcement of the drug laws of the United States.   Defendants MARK YANEZ ("YANEZ"), TATE HOWE ("HOWE") and KENNY BESK ("BESK") were all employed by the

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

Santa Cruz County Sheriff's Department, and ANTHONY PARKER ("PARKER")  BRENDAN OMORI, ("OMORI), JOHN FERNANDEZ ("FERNANDEZ"), were all employed by the DEA; these defendants were, in performing the unlawful and unconstitutional acts alleged herein, acting in their individual capacities and/ or acting in their official capacities and when performing all of the acts herein alleged were acting under color of state and/or federal law  and the statutes, ordinances, regulations, customs and usages of the State of California and the United States of America.

12.   TWENTY UNKNOWN CITY, COUNTY, FEDERAL AND OTHER INDIVIDUALS (collectively hereinafter referred to as the "defendants") were sheriff's deputies, police officers, federal agents, correctional officers and/or other individuals acting in concert with the defendants; in performing the acts alleged herein, these defendants were either acting as agents of the CITY and COUNTY employed by the CITY and COUNTY and/or were acting individually, outside the course and scope of their employment; and, in performing all of the acts alleged herein, these defendants acted under color of state and federal law and the statutes, ordinances, regulations, customs and usages of the CITY, COUNTY and DEA and pursuant to the official policy, custom and practice of the CITY COUNTY and the DEA.  These defendants are charged with enforcing federal, state and local laws and additionally charged with knowledge and protection of citizens' constitutional rights while enforcing such laws.

13. The names and capacities of defendants TWENTY UNKNOWN CITY AND OTHER EMPLOYEES are presently unknown to the plaintiffs.  Each of these unknown parties has acted as agent of or in concert with the named defendants in the matters referred to herein and is responsible in some manner for the damages suffered by plaintiff.  Plaintiffs will amend this complaint to add the names and capacities of these defendants when ascertained.

14. In doing the things herein alleged, the defendants, and each of them, acted as the agent, servant, employee of the remaining defendants, and acted in concert with them

**FACTS GIVING RISE TO THE CLAIMS FOR RELIEF**

15.  Plaintiffs hereby incorporate by reference the allegations in Paragraphs 1-14

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

above.

16. On September 12, 2011, HALEY, EMILY and JESSICA were at home with their parents.

17. At approximately 8:00 a.m., plaintiffs' father opened the front door and saw police cars, a large S.W.A.T. team van, and over 20 officers surrounding and approaching the home. They were carrying a giant battering ram, and other officers were carrying assault rifles. Many of the officers were wearing full desert camouflage as if they were soldiers in the Iraq war. They were carrying a variety of guns, weapons, and rifles. Seconds later, a full-scale invasion of the home was underway.

18. The officers, including YANEZ, HOWE and BESK, entered the home and first detained plaintiffs' father (Robert Wright), while holding guns point blank aimed directly at him. The officers said they were looking for Haley Wright. Mr. Wright told them she was upstairs in her bedroom. Mr. Wright also told the police that he his two other daughters, EMILY and JESSICA were in the home, in the downstairs bedrooms, each with their babies. The defendants proceeded to burst into each of their bedrooms, guns drawn.

19. The defendant SWAT team members entered EMILY's room with guns drawn. They pointed a gun directly at EMILY and ordered her to leave the room where her six month old baby was sleeping. When EMILY protested stating she had an infant in the crib, they forced her at gun point to leave the child alone and proceeded to pat search her; they also searched the crib while the baby was still present in the crib. The defendants likewise broke into JESSICA's room and pointed assault rifles directly at her, actually touching her in the chest with their guns. They also forced her from her bedroom at gunpoint despite the fact that she had to leave her 8 month old infant in the room alone and unattended. Neither EMILY nor JESSICA resisted the defendants in any manner except to verbally inform them of the presence of their babies.

20. Nobody in the home knew why the search and invasion was happening. The police did not state a reason, and did not suggest any reason whatsoever as to why they were present except to say they were looking for HALEY. JESSICA and EMILY were terrified. They

Kate Wells and Aaron Lodge, Attorneys for plaintiff

did not know if they were going to be shot, harassed, taken to jail, or what could possibly be going on.

21.     The officers moved to the upstairs bedroom, where they had been told that HALEY was located.  They entered her room, as they had her sister's rooms, with guns drawn. They approached HALEY, who was there with her small dog who was barking.  As the officers pointed guns directly at both HALEY and the dog, she was fearful that they were going to shoot her dog.

22.     HALEY, who was innocent of any wrongdoing, asked what they were looking for and why they were there.  The defendant officers said they had a federal warrant for her arrest.  HALEY was confused and kept trying to ask more questions, but they would not say anything more.

23.     The officers then handcuffed and arrested HALEY.  As they pulled her outside, she saw for the first time all the police cars, vehicles and SWAT team van.  Also, standing around the street were many neighbors, friends and other residents of the area, all watching HALEY being handcuffed and arrested.   She again asked to know why she was being arrested and still not one of the defendants responded to her questions; nor did any officer tell anyone else in the family why she was being arrested. HALEY was terrified and confused and humiliated, knowing that the event left the false impression with her family and neighbors that she had committed some horrible crime.

24.     The police walked HALEY to the end of the block, where they waited for another large van to pick her up and transport her.  She was placed in the van with other women, strangers to HALEY, who had also been arrested.  As HALEY entered the van, the other women looked surprised and inquired as to whom she was.   It was clear to the defendants that HALEY did not know these women and that they were obviously not cohorts in a drug cartel.   The other women were aware of why they were being arrested, and clearly knew each other.  HALEY did not know any of them, and had never met them, ever before.  The van then proceeded to pick up another woman, who again clearly knew all the other women in the van, except for HALEY.  The defendants transported the women to San Jose where they were incarcerated.

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

25.    HALEY, knowing that she had committed no crime, assumed that she would be released that night, after the defendants discovered that she was not involved in the drug cartel and was not the same "Haley" that was named in the Federal Warrant.   HALEY further assumed that she would still be released on bail and would have the opportunity to prove her innocence.  Instead, even though the officers in fact found nothing unlawful, nor any incriminating evidence in their search of her house, and even though the officers did not have any evidence of any kind against her, they kept her incarcerated failing and refusing to investigate HALEY's charge that she was not the person they were looking for.

26.    After HALEY was transported, booked and placed in a holding cell with another woman, a man entered the cell.  He introduced himself as "Joshua" (Defendant SINGLETON), and first addressed the other woman in the cell named Bridgette.  He looked at her and told her she was "screwed".  He laughed and said that there was nothing she could  do to save herself.  He further stated that she was "all over this case and our phone taps and I have a favorite one of you."  More names were mentioned that HALEY had never heard of.

27.    SINGLETON then looked at HALEY and told her that she was not in as much trouble as Bridgette, but was looking at a minimum of 4 years in state prison.  HALEY, who was terrified, asked to know why and what for.   She told him that she did not know any of the people he had named and did not know why she was there. SINGLETON then said  "come on, you don't know Perro?"  She truthfully told him no, she had never heard of her, or him.  HALEY then told him that he had the wrong person.  The other defendants confirmed to SINGLETON that they did not know HALEY and that she was not the "Haley" that had been involved in the drug cartel.

28.    SINGLETON then asked her what kind of car she drove and she honestly responded that she drove a 2001 black Jetta VR6 which was easily verifiable through DMV records.  Despite the fact that the information was in their hands that HALEY was not the person named Haley that was a member of the drug cartel, defendants failed and refused to look at their own evidence, including photos of the "real" Haley, and failed and refused to match fingerprints that would have proven her innocence.

29.     After SINGLETON left, whenever HALEY spoke with jail personnel or anyone she repeatedly told them they had the wrong person and asked if there was something she could do.   She got no sympathy or help from the police or from the sheriffs present at the jail. She remained incarcerated and helpless, as the days and weeks passed by.

30.     At the first court hearing, bail was denied.  By then, HALEY's family and grandparents had taken a very active role in trying to at least free her on bail.  At the next bail hearing, the counts were finally read out loud in court.   HALEY's  grandparents were there, in court, eager to help.  They heard the judge read all the counts, and evidence, against each of the defendants.  The grandparents then noticed that the judge had nothing to say when it came to the "defendant" Haley Wright, as if even the charging documents did not state any reason why HALEY should be held in custody.

31.     Nevertheless, the judge set an extremely high bail for HALEY.  The grandparents made a plea, but were told that they must not care about their granddaughter very much or they would have mortgaged their home. The grandparents were devastated by the judge's remark, and still mention it today as an example of how harsh the treatment was toward both HALEY and the whole family fighting on the outside to get some justice for her inside.

32.     On several other occasions, SINGLETON interrogated HALEY while she was incarcerated.  He had written the affidavit used for obtaining the warrant to use the S.W.A.T. team and lethal weapons, in entering the home, searching and arresting HALEY.  Plaintiff is informed and believes and alleges thereon that he was employed by the Santa Clara Sherriff's department, and was placed by them as an agent on loan working with the DEA.  SINGLETON continued to accuse her of things she did not know about.  He suggested she knew various people she had never heard of, never had contact with, and never had any remote form of any association or dealings.

33.     When HALEY denied any knowledge of the crimes or the people accused of committing the crimes, SINGLETON would answer that they "had recordings" that indicated otherwise.   She begged him to look at the evidence (which included photos of the real Haley), listen to the tape, check her fingerprints and he would see that she was wrongfully accused – that

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

the real Haley was still out there.  He refused, and she remained in jail, week after week, for a total 30 days, trying every chance she had to explain the truth.

34.    HALEY became aware, through court hearings and her interrogations, that there were photos of another "Haley," who was the person who had actually been involved in the drug cartel.  Further, her co-jail-mate, Bridgette, after about a week in jail, shared some information with HALEY that one of the other defendants (Richard Allen Brady) had a girlfriend named Hallie (not Haley, but Hallie).  It was obvious that the other Hallie, was in fact the one they were looking for, and had been involved with the other defendants.  HALEY again pleaded with the defendants and with SINGLETON to just look at the photos and listen to the tapes, so they would know they have the wrong person.  Defendants continued to refuse to do so.

35.    HALEY was arrested along with a total of 23 others, all of which were accused of being in a Mexican Drug Cartel, or being in some way affiliated with it.  It became clear to HALEY that one of the criminal defendants should have been "Hallie," and not her.  She continued explaining this to no avail.

36.    As it became clear that the other defendants were in a vicious gang, HALEY also began to fear for her safety, and for the safety of her family on the outside.  These gang members logically could have surmised that HALEY had  information or possible connections with the DEA, and the gang may have wished for her to be silenced.  Further, HALEY became aware that if she was ever to get out of jail,  that she and her family would remain in danger, as the gang may conclude HALEY knew something, and confessed it to the police.

37.    HALEY is informed and believes and alleges thereon that she was arrested because the name Hallie came up in one of defendants' conferences and one of the defendants remembered HALEY's name due to an encounter several years earlier.  With no evidence at all and without checking to see if the HALEY he knew was the Hallie they were looking for, defendants jumped to the conclusion that it must be HALEY, despite evidence in their own possession that would have proven she was not Hallie.  The defendants, without verifying the truth of the defendant officer's hunch, quickly asked for and received a federal warrant based on the

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

false information and ordered the SWAT team to gear up and get ready, and ordered the false arrest of HALEY.  Because of defendants' unconstitutional and unlawful actions, HALEY was falsely arrested and suffered through false incarceration for 30 days.

38.     Finally, on October 12, 2011, exactly one month after being taken to jail, HALEY's bail was lowered to $20,000.00, and her family was able to get her released on bail. There were multiple restrictions placed on HALEY's release, and she was still considered by the court to be a criminal defendant.  She was not allowed to travel; she was forced to surrender her passport and visas that she might have; and of course she was ordered to and did appear at the subsequent hearings.  Ms. Wright complied with all conditions, posted bail, and was released.

39.     Although the defendants had the evidence in their possession from the beginning, and could have easily confirmed HALEY was the wrong defendant, they continued to keep her incarcerated for weeks.  It took several weeks for HALEY's criminal defense attorney to obtain the evidence from defendants.  The moment the attorney obtained it, he met with the US attorney and five other agents, officers and detectives.  They played the phone conversations and compared HALEY's voice.  They viewed the multiple photos they had of the real criminal Hallie and they unanimously agreed they had the wrong person, and immediately realized they had to release her.  However, they said it would take 3 more weeks to accomplish her full release.

40.     Another month passed, and finally on November 15, 2011, all charges were dropped against HALEY.

41.     HALEY had lost her job and her employer would not hire her back because of the charges that defendants brought against her.  HALEY was shocked and humiliated to discover that the Santa Cruz Sentinel newspaper had run a feature story about the arrest, and the local ties to the Mexican Drug Cartel.   HALEY's full name, HALEY JANE WRIGHT was mentioned in the article as one of the criminals.

42.     Because of the unlawful and unconstitutional actions of defendants, HALEY suffered severe emotional distress and symptoms of post traumatic stress disorder requiring ongoing professional counseling.  She lost her job and had to leave her home for fear that the drug cartel members might seek revenge against her and her family.  HALEY began to see

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

a counselor on a regular basis.  She was diagnosed with PTSD and was forced into taking anti-depressants and anxiety medications.

43.     HALEY has had continuing nightmares about the evening of the invasion by the SWAT  team and her incarceration.  EMILY and JESSICA also suffered continuing emotional distress due to the actions of the defendant SWAT team.

44.     HALEY, EMILY and JESSICA filed timely tort claims with the CITY and HALEY filed timely tort claims with the COUNTY and with the DEA.  The CITY and COUNTY claims were denied and the DEA failed to respond to the Federal Tort Claim.

## FIRST CLAIM FOR DAMAGES
## VIOLATION OF CIVIL RIGHTS (Title 42 U.S.C. Section 1983)
## FOURTH AND FOURTEENTH AMENDMENT
### Excessive Force
### [ALL PLAINTIFFS VS. ALL DEFENDANTS]

45.     Plaintiffs re-allege and incorporate herein by reference the allegations and facts set forth in paragraphs 1-44 of this complaint.

46.     Despite the fact that plaintiffs did not resist the defendants in any manner, nor did they pose any threat to the defendants in that they were obviously unarmed and cooperative, Defendants used more force than necessary against the plaintiffs including pointing guns and assault rifles at them and their babies.  In the case of Plaintiff EMILY, defendants, for no reason, actually shoved their loaded gun into her chest.

47.     The defendant governmental entities' failure to train its defendant employees regarding the proper use of force amounted to deliberate indifference to the rights of plaintiffs who were individuals with whom  those employees were likely to come into contact.  Such failure to train resulted in the constitutional injuries to plaintiffs and said injuries would have been avoided had the defendant governmental agencies properly trained the defendant employees.

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

48.     As a direct and proximate result of the unconstitutional acts of defendants as described herein, plaintiffs suffered injuries and damages, including physical and emotional distress.

49.     The acts of the individual defendants were intentional, malicious and/ or were taken with deliberate, callous and wanton disregard of the constitutional rights of the plaintiffs and as such, the plaintiffs are entitled to punitive damages according to proof.

### SECOND CLAIM FOR DAMAGES

### VIOLATION OF CIVIL RIGHTS (Title 42 U.S.C. Section 1983)

### FOURTH AND FOURTEENTH AMENDMENT

### Unlawful Search and Seizure

### [ALL PLAINTIFFS VS. ALL DEFENDANTS]

### False Imprisonment

### [PLAINTIFF HALEY VS. ALL DEFENDANTS]

50.     Plaintiffs incorporate herein by reference the allegations in paragraphs 1 – 49.

51.     The defendants had no evidence or probable to search, seize and/ or arrest any of the plaintiffs.  Furthermore, defendants had no probable cause to incarcerate HALEY.   In the case of HALEY , Defendants had the exculpatory evidence in their hands but deliberately failed and refused to look at the evidence which would have proven that HALEY was innocent.  As stated more fully above, the defendants made erroneous conclusions based on a complete absence of any evidence.  The defendants did not do any investigation, did not even look at their own photos of the real criminal "Haley," but just assumed Plaintiff Haley Wright "must be" the same person, and based on this complete lack of any evidence,  performed a full scale unconstitutional search, seizure, arrest, and incarceration of her.  Said policies and lack of training also led to the defendants' violation of EMILY and JESSICA's constitutional rights to be free from search, seizure and arrest without probable cause.

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

-13-
FIRST AMENDED COMPLAINT FOR DAMAGES

52.     The government defendants deliberately failed to properly train and supervise their employees and failed to implement and maintain proper procedures which would have required that prior to the search, seizure, arrest or incarceration of any person including plaintiffs herein, they must have probable cause.  Moreover in the case of HALEY, they failed to train their employees or implement policies that would require that some efforts -- such as the verification of fingerprints, photographs and other evidence -- are made to match the identity of the person arrested and incarcerated with that of the person who was wanted.   As a result of the aforementioned policy, practice or custom, no one bothered to check the identity of HALEY, thereby causing unconstitutional detention, arrest and incarceration.

53.     As a direct and proximate result of the deliberate, reckless, callously indifferent acts of defendants as described herein, plaintiffs have suffered physical and emotional damages, loss of income, and monetary damages.

54.     The acts of the individual defendants were intentional, malicious and/ or were taken with deliberate, callous and wanton disregard of the constitutional rights of the plaintiffs and as such, the plaintiffs are entitled to punitive damages according to proof.


**THIRD CLAIM FOR DAMAGES**

**VIOLATION OF CIVIL RIGHTS (Title 42 U.S.C. Section 1983)**

**FIFTH AND FOURTEENTH AMENDMENT**

**Violation of Due Process (Right to Liberty)**

**[PLAINTIFF HALEY VS. ALL DEFENDANTS]**

55.     Plaintiff incorporates herein by reference the allegations in paragraphs 1 – 54.

56.     Defendants, in performing the actions herein alleged, violated HALEY's constitutional right to liberty as it is protected from unlawful state deprivation by the

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

due process clause of the Fourteenth Amendment and from unlawful federal deprivation by the Fifth Amendment.  By continuing to incarcerate HALEY despite her repeated protests of innocence and despite the defendants' possession of evidence that would have exonerated her, deprived her of her liberty without due process of law.  A detainee, such as HALEY has a constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release.

57.     HALEY alleges that defendants recklessly and with deliberate indifference to her right to due process ignored the evidence in their possession and failed to take any steps to identify her before arresting her and causing her incarceration for 30 days plus another 30 days while she was on probation.  Had defendants simply compared evidence in their possession, HALEY's fingerprints, photographs, audio recordings, DMV records or physical characteristics, with those of the woman named "Hallie" who was the person they wanted for participation in the drug cartel, or otherwise attempted to verify HALEY's identity in any manner, they would have discovered that she was not the person who was wanted.  Defendants failed to accord HALEY the minimum due process appropriate to the circumstances to ensure that her liberty was not arbitrarily abrogated and acted with deliberate, callous and reckless indifference to her right to due process.

58.     Plaintiff further alleges that the lack of probable cause arose from defendants' deliberate indifference to, and reckless disregard for, HALEY's rights and/or from defendants' conscious failure to train their employees in the procedures necessary to avoid the mistaken arrest and incarceration of persons such as plaintiff.

59.   As a direct and proximate result of Defendants' violation of HALEY's due process rights under the Fifth and Fourteenth Amendments and the resulting loss of her liberty, she has suffered damages as described herein before including severe physical and emotional distress, medical and counseling expenses, loss of her employment, loss of income and loss of the

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

ability to become gainfully employed.

60.     The acts of the individual defendants were intentional, malicious and/ or were taken with deliberate, callous and wanton disregard of the constitutional rights of the plaintiffs and as such, the plaintiffs are entitled to punitive damages according to proof.

**FOURTH CLAIM FOR DAMAGES**

**VIOLATION OF CONSTITUTIONAL RIGHT TO FREEDOM OF MOVEMENT**

**Fourteenth Amendment to the United States Constitution (Title 42 Section 1983)**

**[HALEY vs. ALL DEFENDANTS]**

61.     Plaintiff incorporates herein by reference the allegations in paragraphs 1 – 54.

62.     Defendants, by their actions in falsely arresting and incarcerating HALEY for 30 days and unlawfully placing her on probation for another 30 days, violated her right to freedom of movement guaranteed by the Privileges and Immunities Clause and the Fourteenth Amendment.

63.     The government defendants deliberately failed to properly train and supervise their employees and failed to implement and maintain proper procedures which would have required that prior to the arrest or incarceration of any person including HALEY, they must have probable cause.  Moreover, they failed to train their employees or implement policies that would require that some efforts -- such as the verification of fingerprints, photographs and other evidence -- are made to match the identity of the person arrested and incarcerated with that of the person who was wanted.   As a result of the aforementioned policy, practice or custom, no one bothered to check the identity of HALEY, thereby causing unconstitutional detention, arrest and incarceration resulting in HALEY's arbitrary and unlawful loss of freedom of movement for 60 days.

64.     As a direct and proximate result of defendants' deliberate violation of

Kate Wells and Aaron Lodge, Attorneys for plaintiff

HALEY's Fourteenth Amendment rights as described herein, she suffered damages including loss of employment and loss of income.

65.     The acts of the individual defendants were intentional, malicious and/ or were taken with deliberate, callous and wanton disregard of the constitutional rights of the plaintiffs and as such, the plaintiffs are entitled to punitive damages according to proof.

## FIFTH CLAIM FOR DAMAGES
## VIOLATION OF CALIFORNIA CIVIL CODE SECTIONS 52.1
## [ALL PLAINTIFFS VS. ALL DEFENDANTS]

66.     Plaintiffs re-allege and incorporate herein by reference the allegations and facts set forth in paragraphs 1-65  of this complaint.

67.     In doing the acts complained of herein, defendants violated plaintiffs' rights under California Civil Code Section 52.1(b), by interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution and laws of the State of California.

68.     As a direct and proximate result of DEFENDANTS' violation of California Civil Code Section 52.1, plaintiffs sustained injuries and damages as set forth herein. Further, plaintiffs claim all damages and penalties allowed by law, including California Civil Code Sections 52 and 52.1, and including costs, treble damages, punitive damages, civil penalties, and attorneys' fees.

## JURY TRIAL DEMAND

69.   Plaintiffs demand a jury trial.

## PRAYER

**WHEREFORE,** plaintiffs pray for judgment against the defendants, and each of them, as follows:

A.  General, special and statutory damages according to proof;

B.  Punitive damages against the individual defendants according to proof;

Kate Wells
and
Aaron
Lodge,
Attorneys
for plaintiff

C.  Attorney's fees pursuant to statute;

D.  Costs of suit; and

E.  For such other and further relief as the court deems appropriate.

Dated: July 24, 2013 _____**/s/**_____

KATHLEEN E. WELLS,
Attorney for Plaintiffs

Dated:  July 24, 2013_____/s/_____

AARON J. LODGE,
Attorney for Plaintiffs

**Kate Wells and Aaron Lodge, Attorneys for plaintiff**

FIRST AMENDED COMPLAINT FOR DAMAGES