United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

HALEY WRIGHT, EMILY WRIGHT, and JESSICA WRIGHT,

Plaintiffs,

v.

CITY OF SANTA CRUZ, COUNTY OF SANTA CRUZ, MARK YANEZ, TATE HOWE, KENNY BESK, ANTHONY PARKER, BRENDAN OMORI, JOHN FERNANDEZ, DRUG ENFORCEMENT ADMINISTRATION, JOSHUA SINGLETON, and TWENTY UNKNOWN FEDERAL, CITY, and COUNTY INDIVIDUALS and AGENCIES,

Defendants.

Case No. 13-cv-01230-BLF

**ORDER GRANTING THE UNITED STATES' MOTION TO DISMISS; AND DENYING THE INDIVIDUAL FEDERAL AGENTS' MOTION TO DISMISS**

[Re: ECF Nos. 49, 50]

This action arises out of law enforcement officers' mistaken identification of Plaintiff Haley Wright as a member of a Mexican drug cartel. A SWAT team entered Haley's home, pointed weapons at her and her family, arrested her, and held her in jail for thirty days before determining that a mistake had been made. Haley and her sisters, Emily and Jessica Wright (collectively, "Plaintiffs")[1], sue city, county, and federal agencies and officers who were involved in the incident.

The United States moves to dismiss the operative first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a clam upon which relief may be granted, arguing that Plaintiffs did not exhaust administrative remedies under the Federal Tort

[1] This order uses Plaintiffs' first names for ease of reference; the Court intends no disrespect by this informal mode of address.

United States District Court
Northern District of California

Claims Act ("FTCA") before filing suit. Four individual members of the Drug Enforcement Administration ("DEA") Joint Task Force that was investigating the cartel ("Individual Federal Agents")[2] move to dismiss under Federal Rule of Civil Procedure 12(b)(5)[3] for failure to effect timely service of process.

The Court has considered the briefing and the oral argument that was presented at the hearing on June 26, 2014. For the reasons discussed below, the United States' motion is GRANTED and the Individual Federal Agents' motion is DENIED.

## I. BACKGROUND

The FAC alleges that in 2011, the DEA was involved in a joint operation with the Santa Cruz County Sheriff's Office and the Santa Cruz Police Department to arrest individuals who were members of a large Mexican drug cartel. (FAC ¶¶ 1-2, ECF 11) The name "Haley" was mentioned as a person who was a member of the cartel. (*Id.* ¶ 1) One of the officers involved in the operation knew that Plaintiff Haley Wright had been arrested several years earlier on a charge of being under the influence. (*Id.*) Defendants immediately obtained an indictment and an arrest warrant against Plaintiff Haley Wright without conducting any investigation or attempting to confirm that she was the "Haley" connected to the cartel. (*Id.* ¶¶ 1, 25) In fact, the DEA had multiple surveillance photographs of the "Haley" in question, who did not look like anything like Plaintiff Haley Wright. (*Id.* ¶ 1)

Defendants executed the arrest warrant against Plaintiff Haley Wright at 8:00 a.m. on September 12, 2011. (FAC ¶¶ 2, 17) Approximately twenty officers, many wearing full desert camouflage and/or SWAT gear, approached the home where Haley lived with her parents, her two

---

[2] Those individuals are Brendan Omori, John Fernandez, Joshua Singleton, and Anthony Parker. It appears from the briefing that Fernandez was a DEA agent and that Omori, Singleton, and Parker were local law enforcement officers specially deputized by the DEA. (Reply at 2, ECF 63) A local law enforcement officer on detail to a federal agency is deemed to be an employee of the agency for purposes of the FTCA. 5 U.S.C. § 3374(c)(2). Plaintiffs do not dispute the moving parties' characterization of all four officers as "Individual Federal Agents."

[3] The Individual Federal Agents' motion indicates that it is brought under "Fed. R. Civ. P. 12(b)" but it does not specify which of the subsections (b)(1)-(b)(6) applies. The Court presumes that the motion is brought under Rule 12(b)(5), governing motions to dismiss for insufficient service of process.

sisters, and her sisters' infant children. (*Id.*) Haley's father opened the front door and was detained at gunpoint by some members of the team while others entered the home and located the bedrooms of Haley, Emily, and Jessica. (*Id.* ¶¶ 17-21) Officers entered the three bedrooms with weapons drawn; searched the crib of Emily's infant child while the child was present in the crib; forced Emily and Jessica to leave their infant children (ages six months and eight months) unattended; and pointed weapons at Haley's dog, frightening Haley into thinking that they were going to shoot the dog. (*Id.*)

Defendants handcuffed Haley and walked her out to the street in full view of friends and neighbors. (FAC ¶ 23) She was placed in a van containing other women who clearly knew each other and who did not know Haley. (*Id.* ¶ 24) Haley was booked and placed in a jail cell with another woman. (*Id.* ¶ 26) She was held without bail initially, and then she was held on an extremely high bail. (*Id.* ¶¶ 30-31) Haley repeatedly told law enforcement officers and jail personnel that they had the wrong person, but she was ignored. (*Id.* ¶¶ 27-29, 32-34) One of the other women arrested in connection with the cartel told Haley about a "Hallie" that sounded like the person the law enforcement officers were seeking. (*Id.* ¶ 34) Haley learned that there were photographs of the other "Haley" or "Hallie." (*Id.*) Haley asked Defendants to look at the photographs, but Defendants refused to do so. (*Id.*)

Haley remained in jail for one month; finally, on October 12, 2011, her bail was lowered to $20,000, and her family was able to get her released on bail. (FAC ¶ 38) The charges against her were dropped on November 15, 2011, approximately two months after her arrest and one month after her release from jail. (*Id.* ¶¶ 39-40) Haley lost her job while she was in jail, and her employer refused to rehire her because of the charges that had been brought against her. (*Id.* ¶ 41) Haley moved away from home for fear that the drug cartel might pose a danger to her family. (*Id.* ¶ 42)

Haley, Emily, and Jessica filed this action on March 19, 2013, and they filed the operative FAC on July 24, 2013. (Compl., ECF 1; FAC, ECF 11) Plaintiffs sue the City of Santa Cruz, the County of Santa Cruz, the DEA, and individual law enforcement officers, asserting four claims

United States District Court
Northern District of California

under Section 1983[4]: (1) excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (2) unlawful search and seizure and false imprisonment in violation of the Fourth and Fourteenth Amendments; (3) deprivation of due process (right to liberty) in violation of the Fifth and Fourteenth Amendments; and (4) deprivation of right to freedom of movement in violation of the Fourteenth Amendment. Plaintiffs also allege a fifth claim under California Civil Code § 52.1 for interference with rights secured by the United States Constitution and the laws of the State of California.

Santa Cruz County answered the FAC on January 29, 2014. (Answer, ECF 42) The City of Santa Cruz answered on February 5, 2014 after the Court denied its Motion to Dismiss. (Answer, ECF 45) On February 7, 2014, the United States filed a Notice of Substitution of United States of America in Place of Defendant Drug Enforcement Administration.[5] The United States and the Individual Federal Agents now move to dismiss the action, the United States for failure to state a claim and the Individual Federal Agents for failure to effect timely service of process. (Mots., ECF 49, 50) Plaintiffs opposed the motions on May 7, 2014, and Defendants replied on May 20, 2014 and May 21, 2014. (Opps., ECF 58, 59; Replies, ECF 62, 63) A hearing was held on June 26, 2014.

## II. UNITED STATES' MOTION TO DISMISS UNDER RULE 12(b)(6)

### A. Legal Standards

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the

[4] 42 U.S.C. § 1983.

[5] The FTCA is the exclusive remedy for tort actions against a federal agency; however, "the United States is the only proper party defendant in an FTCA action." *Kennedy v. United States Postal Service*, 145 F.3d 1077, 1078 (9th Cir. 1998). Accordingly, the United States properly substituted itself as the defendant in place of the DEA.

Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**B. Analysis**

"The United States, as sovereign, can only be sued to the extent it has waived its sovereign immunity." *Vacek v. United States Postal Service*, 447 F.3d 1248, 1250 (9th Cir. 2006). As relevant here, the FTCA waives the United States' sovereign immunity for certain torts committed by federal employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "The 'law of the place' in § 1346(b) has been construed to refer to the law of the state where the act or omission occurred." *Delta Savings Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001). Thus in the present case "any duty that the United States owed to plaintiffs must be found in California state tort law." *Id.*

**1. Constitutional Torts**

Claims 1-4 assert violations of Section 1983, under which "a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right." *Patel v. Kent School Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). The United States and its agencies are not "persons" within the meaning of Section 1983. *Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011). These claims would not be viable even if they were recast as *Bivens*[6] claims because the FTCA does not waive the United States' immunity for federal "constitutional torts." *See id.* at 904; *see*

[6] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

United States District Court
Northern District of California

*also F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."). Accordingly, the United States' motion is GRANTED as to Claims 1-4.

**2. Other Torts**

Claim 5 is asserted under California Civil Code § 52.1, "which provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" *Chaudhry v. City of Los Angeles*, --- F.3d ----, Nos. 11–55820, 11–55906, 11–55907, 2014 WL 2030195, at *6 (9th Cir. May 19, 2014) (quoting Cal. Civ. Code § 52.1). The Ninth Circuit has indicated that the FTCA can waive the United States' sovereign immunity with respect to a claim asserted under California Civil Code § 52.1. *See Xue Lu v. Powel*, 621 F.3d 944, 950 (9th Cir. 2010). In this case, however, the United States asserts that Plaintiffs are barred from asserting a § 52.1 claim or any other tort claim because Plaintiffs did not exhaust administrative remedies under the FTCA.

**3. Exhaustion Requirement**

"An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2765(a). "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." *Id.*; *see also Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013) (discussing FTCA's administrative exhaustion requirement).

The United States contends that Emily and Jessica did not exhaust administrative remedies under the FTCA because neither presented a claim to the DEA prior to instituting this lawsuit. Emily and Jessica do not oppose the United States' motion on this ground. (Opp. at 1, ECF 59) Accordingly, with respect to Emily and Jessica, the United States' motion is GRANTED as to Claim 5 and as to any other potential tort claims.

**4. Haley's Presentation of Tort Claim on August 31, 2012**

The FAC alleges that "Haley filed timely tort claims with the . . . DEA." (FAC ¶ 44, ECF

United States District Court
Northern District of California

11) While it concedes that Haley presented a tort claim to the DEA, the United States contends that the claim was not administratively exhausted before Haley instituted this lawsuit.

The parties submit copies of Haley's submissions to the DEA and the DEA's responses thereto. (*See* Richardson Decl. Exhs. 1-2, ECF 49-1; Wells Decl. Exhs. 1-3, ECF 59-1; Lodge Decl. Exh. 2, ECF 65-1) The Court's analysis of a Rule 12(b)(6) motion normally is limited to the face of the complaint and documents attached thereto. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Under the incorporation by reference doctrine, however, the Court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Id.* (internal quotation marks and citation omitted) (alteration in original). The doctrine has been extended "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.* Here, the FAC expressly references Haley's submission of tort claims to the DEA; the viability of the action against the United States depends upon those claims; and no party disputes the authenticity of the exhibits submitted in connection with this motion. The Court concludes that under these circumstances, application of the incorporation by reference doctrine is appropriate.

Haley submitted a Standard Form 95 ("SF-95") to the DEA dated August 31, 2012, claiming $250,000 in damages for personal injuries resulting from her arrest and detention. (Lodge Decl. Exh. 2)[7] The DEA issued a letter dated September 7, 2012 that neither granted nor denied the claim but rather requested additional information. (Wells Decl. Exh. 1, ECF 59-2). Specifically, the DEA indicated that: it had received Haley's SF-95 seeking $250,000 in damages for personal injuries resulting from her arrest and pretrial detention on federal narcotics charges;

[7] Two documents are attached to the Lodge Declaration – an image of the envelope in which the August 31, 2012 SF-95 was submitted to the DEA and the August 31, 2012 SF-95 itself. Although the Lodge Declaration does not expressly identify those documents as "exhibits," the August 31, 2012 SF-95 is referred to herein as "Exhibit 2" to the Lodge Declaration for ease of reference.

United States District Court
Northern District of California

the SF-95 bore the signature of Haley's counsel rather than Haley; and a SF-95 signed by counsel must be accompanied by evidence of counsel's authority to present the claim. (*Id.*) The DEA also requested that Haley provide "all available documentation" concerning medical or psychological treatment received, costs of such treatment, reports describing the prognosis and treatment, employment contracts, and lost earnings. (*Id.*)

**5. Haley's Amendment of Tort Claim on October 8, 2012**

About a month after the DEA's request for additional information, Haley submitted a second SF-95 on which the original date of August 31, 2012 was crossed out and the date October 8, 2012 was inscribed. (*See* Richardson Exh. 1, ECF 49-1) The October 8, 2012 SF-95 sought $250,000 for personal injuries resulting from Haley's arrest and detention and it included a new three-page chronological account of the events underlying Haley's claim. (*Id.*) The DEA sent Haley two denials of the October 8, 2012 claim, the first dated September 27, 2013 and the second dated October 1, 2013. (Wells Decl. Exhs. 2-3, ECF 59-3, 59-4)

The United States contends that the October 8, 2012 SF-95 constituted an amendment to the August 31, 2012 SF-95. An administrative tort claim "may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. 2675(a)." 28 C.F.R. § 14.2(c). "Upon the timely filing of an amendment to a pending claim, the agency shall have six months in which to make a final disposition of the claim as amended and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until six months after the filing of an amendment." *Id.* Haley filed this lawsuit on March 19, 2013, less than six months after submitting the October 8, 2012 SF-95. Thus, Defendants argue, the lawsuit was filed before administrative remedies were exhausted.

Haley argues that her original August 31, 2012 SF-95 is the operative administrative claim and that the later October 8, 2012 SF-95 was not an amendment but rather "a mere response to the DEA regarding her original claim." (Opp. at 2, ECF 59) Because she filed suit more than six months after submission of the August 31, 2012 SF-95, Haley argues that the lawsuit was not filed prematurely. Alternatively, she argues that if the October 8, 2012 SF-95 constituted an amendment to the August 31, 2012 SF-95, the Court should exercise its equitable powers to

United States District Court
Northern District of California

excuse her premature filing of this lawsuit.

The Court concludes that the October 8, 2012 SF-95 cannot be viewed as anything other than an amended claim. Most obviously, the document is a SF-95, which is the form used to present a claim to a federal agency under the FTCA. *See* 28 C.F.R. § 14.2(a) ("[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident. . . ."). The DEA clearly viewed the October 8, 2012 SF-95 as an amended claim – the DEA's response letters specified that the DEA was denying "the Standard Form 95 (SF-95), Claim for Damage, Injury, or Death dated October 8, 2012." (Resp. Letters, ECF Nos. 49-1, 59-3) The DEA did not issue a separate response with respect to the original August 31, 2012 SF-95, another indication that the DEA viewed the October 8, 2012 claim as an amendment to the earlier claim. The Court must defer to an agency's "interpretation of its own regulations so long as that interpretation is not plainly erroneous or inconsistent with the regulation." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 770 (9th Cir. 2006). Accordingly, Haley's option to deem her claim denied did not accrue until six months after the filing of the October 8, 2012 SF-95. As discussed above, Haley did not wait the requisite six months before instituting this lawsuit.

The Court lacks authority to permit a lawsuit to go forward if it was filed before the agency denied the administrative claim or was afforded a full six months to address the claim. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993). Haley relies on *Wong v. Beebe* for the proposition that this Court has discretion to excuse her noncompliance with § 2675(a). That reliance is misplaced. *Wong* held that courts have discretion to equitably toll 28 U.S.C. § 2401(b), governing the limitations periods for presenting an administrative claim and for filing suit after the administrative claim is denied. *Wong*, 732 F.3d at 1033. *Wong* did *not* hold that courts have discretion to excuse the premature institution of a lawsuit before exhaustion of administrative remedies under § 2675(a). To the contrary, *Wong* expressly distinguished § 2765(a) as a "jurisdictional" statute not subject to the principles of equitable tolling that apply to § 2401(b). *Id.* at 1047. Accordingly, as to Haley, the United States' motion is GRANTED as to

Claim 5 and as to any other potential tort claims.

Given their failure to exhaust administrative remedies under the FTCA, Plaintiffs would be unable to allege any viable claims against the United States even if they were granted an opportunity to amend their pleading. Accordingly, the action against the United States is hereby DISMISSED with prejudice.

## III. FEDERAL AGENTS' MOTION TO DISMISS UNDER RULE 12(b)(5)

### A. Legal Standards

A motion to dismiss may be brought under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion." *Fairbank v. Underwood*, --- F. Supp. 2d ----, No. 3:13-cv-00397-HU, 2013 WL 6420987, at *3 (D. Oregon Dec. 8, 2013).

Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* Even absent a showing of good cause, the court has discretion to extend the time for service. *Henderson v. United States*, 517 U.S. 654, 662 (1996); *Mann v. American Airlines*, 324 F.3d 1088, 1090 n.2 (9th Cir. 2003). The court may extend the time for service retroactively after the initial 120-day period has expired. *Id.* at 1090.

### B. Analysis

The Individual Federal Agents move to dismiss the action for failure to effect timely service of process as required under Federal Rule of Civil Procedure 4(m). Plaintiffs oppose the motion, contending that they served the Individual Federal Agents within an extension of time granted by the Court; that even if service was untimely, the Court must extend the time for service retroactively; and that even if it is not required to extend the time for service, the Court should do so in the exercise of its discretion.

**1. Rule 4(m)**

Rule 4(m) required Plaintiffs to serve the Individual Federal Agents within 120 days after filing the complaint. Plaintiffs filed the complaint in this action on March 19, 2013, making the deadline for service July 17, 2013. On July 15, 2013, Plaintiffs requested an extension of time to effect service of process on the bases that one of their attorneys was suffering severe health problems and the other attorney had been out of the country. (Pls.' Req. for Ext., ECF 9) The Court granted that request and extended the deadline for service of process from July 17, 2013 to July 31, 2013. (Order, ECF 10)

Based upon the declarations submitted by both sides and the correspondence submitted by the United States, it is clear that Plaintiffs failed to effect service of process upon the United States or the Individual Federal Agents before the extended July 31, 2013 deadline. (*See* Broderick Decl. and Exhs. A-M; Lodge Decl.) In fact, service was not completed as to the United States until February 3, 2014, six months after that deadline had expired. (Broderick Decl. ¶ 14) Service was completed as to the Individual Federal Agents only because defense counsel obtained their authority to accept service on their behalf once the United States had been served.[8] (Broderick Decl. ¶ 13 and Exh. M)

Plaintiffs' briefing suggests that the Court granted a further extension of the service deadline until February 6, 2014 and thus that service was timely. This suggestion is not supported by the record. (*See* Min. Entry and CMC Order, ECF 44) At the hearing, Plaintiffs' counsel conceded that in fact the Court did not grant Plaintiffs a further extension of the service deadline. Plaintiffs' counsel also acknowledged that he had bungled service with respect to all of the federal defendants until finally completing service six months late.

**2. Rule 4(i)(4)**

Plaintiffs argue that the service deadline must be extended retroactively under Rule 4(i)(4), which provides as follows:

[8] At the hearing, defense counsel clarified that he agreed to accept service on behalf of the Individual Federal Agents without waiving their objections to service as untimely.

United States District Court
Northern District of California

> (4) Extending Time. The court must allow a party a reasonable time to cure its failure to:
>
> (A) serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States; or
>
> (B) serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee.

Fed. R. Civ. P. 4(i)(4). Neither of those provisions helps Plaintiffs here. Subsection 4(A) applies to federal employees sued only in their official capacities; however, the Individual Federal Agents are sued in their individual capacities as well as in their official capacities. (*See* FAC ¶ 11) Subsection 4(B) extends the time for service on the United States if the individual federal employee has been served; in this case, the Individual Federal Agents were not served prior to the United States.

**3. Good Cause**

Plaintiffs alternatively request that the Court find that good cause existed for the late service. "At a minimum, 'good cause' means excusable neglect." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1990) (defining "good cause" under Rule 4(j), the predecessor of Rule 4(m)). "A plaintiff may also be required to show the following: (a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Id.* Plaintiffs served the federal defendants six months after expiration of the extended deadline of July 31, 2013. Counsel's only excuse is that he was "confused" by the federal rules governing service, and that he "read them over and over, and concluded different things with each reading." (Lodge Decl. ¶ 23) Defense counsel informed Plaintiffs' counsel in writing and on multiple occasions that service had not been effected and that formal service of process could not be waived as to the United States. (*See* Broderick Decl. Exhs. A, D, G, H, J, K) Plaintiffs' counsel nonetheless continued to bungle service over a period of several months. Based on this record, the Court cannot conclude that Plaintiffs have demonstrated good cause for failing to effect timely service on the Individual Federal Agents.

United States District Court
Northern District of California

### 4. Court's Discretion

Finally, Plaintiffs ask that the Court exercise its discretion to grant a retroactive extension of the deadline. Even absent good cause, the Court has broad discretion to extend time for service under Rule 4(m). *Henderson*, 517 U.S. at 662; *Mann*, 324 F.3d at 1090 n.2. In determining whether to exercise this discretion, "a district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Mann*, 324 F.3d at 1090-91; *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007). Plaintiffs assert that their claims against the Individual Federal Agents would be time-barred if the present motion were granted; that may well be the case, but Plaintiffs offer no factual or legal support for this assertion. (*See* Opp. at 7, ECF 58) Plaintiffs argue more persuasively that the Individual Federal Agents have not identified any prejudice that would result from extension of the deadline. Based upon the Court's review of the file, it appears that the case is not particularly far along: the answers of Santa Cruz County and the City of Santa Cruz were filed in January and February 2014, respectively (Answers, ECF 42, 45); the deadline for exchange of initial disclosures was February 6, 2014 (Min. Entry and CMC Order, ECF 44); and discovery is just getting under way. Defense counsel had actual notice of the lawsuit in September 2013 and has been aware of Plaintiffs' service efforts since then. (Broderick Decl. Exhs. A-M) The Individual Federal Agents have not asserted that they were unaware of this case. Finally, service was completed on February 3, 2014. (Broderick Decl. ¶ 14) Based upon this record and in the exercise of its broad discretion, the Court extends the service deadline retroactively to February 3, 2014.

Accordingly, the Individual Federal Agents' motion to dismiss is DENIED.

## IV. ORDER

For the foregoing reasons,

(1) the United States' Motion to Dismiss is GRANTED without leave to amend and the action against the United States is DISMISSED with prejudice; and

(2) the Individual Federal Agents' Motion to Dismiss is DENIED.

Dated: July 3, 2014

BETH LABSON FREEMAN
United States District Judge