UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

HALEY WRIGHT, et al.,

          Plaintiffs,

   v.

CITY OF SANTA CRUZ, et al.,

          Defendants.

Case No.  13-cv-01230-BLF

ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL FEDERAL AGENTS' MOTION TO DISMISS

[Re:  ECF No. 91]

      Defendants Joshua Singleton ("Singleton"), Anthony Parker ("Parker"), Brendan Omori ("Omori"), and John Fernandez ("Fernandez") (collectively, "the Agents") move to dismiss the second amended complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6).  After reviewing the motion, opposition, and reply, the Court vacated the hearing and submitted the motion without oral argument.  *See* Order of Jan. 16, 2015, ECF 98.  For the reasons discussed below, the motion to dismiss is GRANTED IN PART AND DENIED IN PART.

## I.    BACKGROUND

      The facts giving rise to this action are well-known to the parties and the Court and need not be set forth in full here.  In brief, the Drug Enforcement Administration ("DEA") was involved in a joint operation with the Santa Cruz Police Department and other local law enforcement agencies for the purpose of investigating a Mexican drug cartel.  During the investigation, an arrest warrant issued for Plaintiff Haley Wright following her indictment by a grand jury.  On September 12, 2011, a SWAT team approached Haley's home, entered, and executed the warrant.  Haley's father, her sisters, and her sisters' infant children were in the home at the time.  Haley was booked and held in jail for approximately one month, at which time her bail was reduced to an amount that

United States District Court
Northern District of California

1    enabled her family to obtain her release.  The charges against Haley were dropped approximately

2    one month after her release on bail.

3           After several rounds of pleading, the only defendants remaining in the action are the City

4    of Santa Cruz and the Agents.[1]  The SAC asserts the following claims on behalf of Haley and her

5    two sisters, Emily Wright and Jessica Wright:  (1) a § 1983[2] claim for excessive force in violation

6    of the Fourth and Fourteenth Amendments; (2) a *Bivens*[3] claim for unlawful search and seizure in

7    violation of the Fourth Amendment; (3) a *Bivens* claim for deprivation of due process (liberty

8    interest) in violation of the Fifth Amendment; (4) a *Bivens* claim for deprivation of the right to

9    freedom of association in violation of the First Amendment; and (5) a claim for violation of

10   California's Bane Act.[4]  The Agents seek dismissal of all claims against them on the bases that

11   they are entitled to qualified immunity and that the SAC fails to state a claim upon which relief

12   may be granted.

13   **II.     LEGAL STANDARD**

14          **A.     Qualified Immunity**

15          "The doctrine of qualified immunity protects government officials from liability for civil

16   damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or

17   constitutional right, and (2) that the right was 'clearly established' at the time of the challenged

18   conduct.'"  *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S.

19   Ct. 2074, 2080 (2011)).  Under the applicable pleading standard, the plaintiff must allege facts

20   sufficient to make out a plausible claim that it would have been clear to the defendant officer that

21   his conduct was unlawful in the situation he confronted.  *Id.* at 2067.  "Because qualified

22   immunity is an affirmative defense from suit, not merely from liability, '[u]nless the plaintiff's

23   allegations state a claim of violation of clearly established law, a defendant pleading qualified

---

[1] The second amended complaint also names as defendants "Twenty Unknown Individuals
Employed By Federal And City Agencies."

[2] 42 U.S.C. § 1983.

[3] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[4] Cal. Civ. Code § 52.1.

United States District Court
Northern District of California

1    immunity is entitled to dismissal before the commencement of discovery.'" *Doe By and Through*

2    *Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1449-50 (9th Cir. 1995) (quoting *Mitchell v.*

3    *Forsyth*, 472 U.S. 511, 526 (1985)).

4          **B.**     **Failure to State a Claim**

5         "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

6    claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

7    *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

8    729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

9    as true all well-pled factual allegations and construes them in the light most favorable to the

10   plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the

11   Court need not "accept as true allegations that contradict matters properly subject to judicial

12   notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

13   unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

14   (internal quotation marks and citations omitted).  While a complaint need not contain detailed

15   factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to

16   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

17   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the

18   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

19   **III.**    **DISCUSSION**

20        **A.**     **Emily and Jessica**

21        The Agents argue, and the opposition concedes, that the SAC does not allege facts

22   sufficient to state any claim by Emily or Jessica against the Agents.  *See* Pls.' Opp. at 10, ECF 95.

23   Accordingly, the motion is GRANTED as to all claims asserted by Emily and Jessica.  The

24   remainder of this order addresses Haley's claims against the Agents, specifically, Claims 2-5 of

25   the SAC.[5]

26

27

28   _____

     [5] Claim 1 is a § 1983 excessive force claim by Emily and Jessica against the City of Santa Cruz.

United States District Court
Northern District of California

United States District Court
Northern District of California

### B.     Official Capacity Allegations

Claims 2, 3 and 4 assert violations of Haley's federal constitutional rights under *Bivens*. "[A] *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity."  *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987).  While the earlier-filed first amended complaint alleged that the Agents acted in their individual capacities and/or their official capacities, *see* FAC ¶ 11, ECF 11, the operative SAC alleges that the Agents acted at all times "within the scope of their federal employment and pursuant to federal law and the statutes, ordinances, regulations, customs and usages of the United States of America," *see* SAC ¶ 6, ECF 90.  The Agents argue that in light of these allegations the SAC fails to state a *Bivens* claim against them.

Plaintiffs concede that the omission of individual capacity allegations against the Agents is fatal to the *Bivens* claims, but they assert that the omission was an error that can be corrected easily.  *See* Pls.' Opp. at 8.  The Court accepts the representation of error by counsel, as officers of the Court.  Because the error so easily could be rectified, the motion to dismiss is GRANTED WITH LEAVE TO AMEND on this basis, but the Court has evaluated Plaintiffs' claims as though the individual capacity allegations had remained in the pleading.

### C.     Claim 2 – Unlawful Search and Seizure

The arrest warrant for Haley was issued pursuant to a grand jury indictment.  SAC ¶ 23.  In Claim 2, Haley alleges that although they had absolutely no evidence or probable cause to believe that she had committed any crime, the Agents "recklessly and with conscious disregard for the truth supplied false incriminating information about HALEY to the prosecutor and hence to the grand jury insuring that HALEY would be falsely indicted as a member of the drug cartel and falsely arrested and incarcerated."  SAC ¶ 41.  Haley alleges that the warrant for her arrest was issued  based on the indictment.  *Id.* ¶ 23.

The SAC does not allege that the Agents actually testified before the grand jury.  To the extent that they did testify, any claims based upon such testimony are subject to dismissal in light of Supreme Court authority holding that grand jury witnesses are entitled to absolute immunity. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012).

4

United States District Court
Northern District of California

1    The law is less clear as to the extent that law enforcement officers may be liable for

2    providing false information to a prosecutor.  Neither party cites cases directly on point.  Haley

3    cites Supreme Court authority for the proposition that "an officer whose request for a warrant

4    allegedly caused an unconstitutional arrest" is entitled to qualified, rather than absolute, immunity

5    for claims arising out of the arrest.  *Malley v. Briggs*, 475 U.S. 335, 344 (1986).  Qualified

6    immunity is sufficient to protect the officer in most cases, because "[o]nly where the warrant

7    application is so lacking in indicia of probable cause as to render official belief in its existence

8    unreasonable . . . will the shield of immunity be lost."  *Id.* at 344-45.  Moreover, a prosecutor's

9    exercise of independent judgment in determining the existence of probable cause for arrest is

10   presumed to break the chain of causation and immunize investigating officers for damages

11   suffered after a criminal complaint is filed.  *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir.

12   2008).  That presumption is rebutted, however, in "situations in which the prosecutor was

13   pressured by police or was given false information; the police act[ed] maliciously or with reckless

14   disregard for the rights of an arrested person; the prosecutor relied on the police investigation and

15   arrest when he filed the complaint instead of making an independent judgment on the existence of

16   probable cause for the arrest; or the officers otherwise engaged in wrongful or bad faith conduct

17   that was actively instrumental in causing the initiation of legal proceedings."  *Id.* at 862-63

18   (internal quotation marks and citations omitted) (alteration in original).

19   These cases are not a perfect fit here, as Haley does not allege that the Agents were

20   involved in a warrant application but rather that they provided false information to the prosecutor

21   for use in a grand jury proceeding that resulted in an indictment and arrest warrant.  However, the

22   cases clearly establish that a law enforcement officer may be liable for providing false information

23   to a prosecutor when that information leads to the commencement of legal proceedings or issuance

24   of an arrest warrant.  "For a constitutional right to be clearly established, its contours must be

25   sufficiently clear that a reasonable official would understand that what he is doing violates that

26   right."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks and citation omitted).

27   "This is not to say that an official action is protected by qualified immunity unless the very action

28   in question has previously been held unlawful; but it is to say that in the light of pre-existing law

the unlawfulness must be apparent." *Id.* (internal quotation marks and citation omitted).  The Court concludes that any officer in the Agents' position would have understood that it would be a violation of Haley's Fourth Amendment rights to give the prosecutor information tying Haley to the cartel if the officer either knew Haley was not actually involved with the cartel or the officer had no reasonable basis for believing that Haley was involved.

Haley alleges that Singleton, Parker, Omori, and Fernandez acted as a team to investigate the drug cartel; met often to share information about the investigation, including photographs of cartel members, audio recordings of telephone calls between cartel members, and information about what cars cartel members used.  SAC ¶ 23.  In particular, the Agents had photographs of a person named "Hallie" that looked nothing like Haley; evidence regarding the car Hallie drove; evidence regarding Hallie's cellular telephone; and voice recordings of Hallie.  *Id.* ¶ 25.  None of the evidence implicated Haley in any way.  *Id.* ¶ 24.  The Agents nonetheless gave the prosecutor "incriminating information" that led to the indictment and arrest of Haley.  ¶¶ 24, 41.  The SAC does not identify precisely what information the Agents gave the prosecutor, but presumably they identified Haley as the "Hallie" who was in fact involved with the cartel.

These allegations are sufficient to state a claim for a Fourth Amendment violation against each of the Agents and to plead around qualified immunity.  In essence, Haley alleges that although there was absolutely nothing in the evidence generated by the investigation to connect her to the cartel, the Agents recklessly and with total disregard to her rights gave her name to the prosecutor for the purpose of obtaining an indictment and ultimately and arrest warrant against her.

The Agents argue that the allegations are insufficient because they refer to the Agents as a "team" and do not provide sufficient detail as to what *each* individual did to violate Haley's constitutional rights.  The Court previously dismissed Haley's claims on the ground that the FAC impermissibly had lumped together all the defendants to the action, a pleading practice held to be inadequate in *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996).  The SAC has cured this defect by alleging specifically that Singleton, Parker, Omori, and Fernandez met frequently to share information during the investigation, that they all had access to the entire pool of evidence, that

6

1   none of the evidence implicated Haley and in fact exculpated her, and that all of the Agents gave

2   the prosecutor information that falsely incriminated Haley in reckless disregard of Haley's rights.

3   *See* SAC ¶¶ 23-24, 41.  Accepting these facts as true as the Court must for pleading purposes,

4   Haley has stated a *Bivens* claim against each of the Agents.

5       The motion to dismiss Claim 2, as asserted by Haley, is DENIED as to all Agents.

6       **D.        Claim 3 – Violation of Due Process (Liberty Interest)**

7       In Claim 3, Haley alleges that during her 30-day detention, the Agents acted recklessly and

8   with deliberate indifference by ignoring evidence in their possession demonstrating that she was

9   not involved in the drug cartel despite her repeated protests of innocence.  SAC ¶¶ 45-46.  Haley

10  asserts that the Agents' conduct deprived her of liberty without due process of the law in violation

11  of the Fifth Amendment.  *Id.*

12      The Agents argue, and the opposition concedes, that the SAC does not allege that Parker,

13  Omori, or Fernandez had any contact with Haley after her arrest.  *See* Pl.'s Opp. at 13.

14  Accordingly, the motion to dismiss Claim 3, as asserted by Haley, is GRANTED WITHOUT

15  LEAVE TO AMEND as to Parker, Omori, and Fernandez.

16      The SAC does allege that Singleton spoke to Haley shortly after she was placed in a

17  holding cell following her arrest.  SAC ¶ 21.  Singleton allegedly questioned Haley about people

18  she did not know, laughed at her denials of involvement, and stated that she was "all over" the

19  case and the telephone taps.  *Id.*  Singleton met with Haley "during the period of her

20  incarceration." *Id.* ¶ 25.  It is not clear from this allegation how many times Singleton met with

21  Haley.  Haley told Singleton that she was not a member of the drug cartel and did not know the

22  other individuals who had been indicted with her.  *Id.*  Other women who had been arrested as

23  members of the cartel also told Singleton that Haley was not involved and that they had never seen

24  or heard of her before the arrest.  *Id.*  Singleton nonetheless failed to check evidence to which he

25  had access, including photographs of "Hallie," which would have proved Haley's lack of

26  involvement.  *Id.*  Haley's defense attorney eventually obtained the evidence, including

27  photographs and audio recordings, and met with Singleton.  *Id.* ¶ 27.  Defense counsel thought that

28  it was clear that Singleton had not checked the evidence to see if it matched Haley.  *Id.*

"A police officer's continuing obligation to disclose highly exculpatory evidence to the prosecutors to whom they report is widely recognized." *Tatum v. Moody*, 768 F.3d 806, 819 (9th Cir. 2014).  In *Tatum*, the defendant police officers knew that a series of distinctive demand-note robberies continued after the plaintiff's arrest and that another man had confessed to some of the robberies.  *Id.* at 809.  The defendant officers did not disclose that information and in fact falsely asserted in police reports that the demand-note robbery crime spree had ceased with the plaintiff's arrest.  *Id.*  The plaintiff's attorney learned of those facts after the plaintiff had spent twenty-seven months in pretrial detention.  *Id.*  The Ninth Circuit held that the officers' conduct violated the plaintiff's due process rights.  The Court expressly restricted its ruling "to detentions of (1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks."  *Id.* at 819-20.

Singleton points out that the facts of *Tatum* were more extreme than the facts alleged here, in which he is not alleged to have *known* that Haley was innocent.  Singleton cites *Rivera v. County of Los Angeles*, 745 F.3d 384, 391 (9th Cir. 2014) for the proposition that "[c]laims of innocence are common in jails."  For that reason "a jailer need not independently investigate all uncorroborated claims of innocence . . . .  Unsupported claims of mistaken identity, by themselves, do not trigger a duty to investigate further."  *Id.* at 391-92.

The present case falls somewhere between *Tatum* and *Rivera*.  While Singleton's alleged conduct does not rise to the level of intentional concealment of the officers in *Tatum*, Haley's allegations go beyond the bare protests of innocence to a jailer discussed in *Rivera*.  Haley's assertions of innocence were made to an investigating officer and were corroborated by other women who were arrested as being cartel members.  The Court concludes that Haley's allegations are sufficient to state a claim that Singleton acted with complete indifference to the risks to Haley's due process rights by refusing to re-check or disclose readily available evidence that ultimately demonstrated Haley's innocence, and that these allegations are sufficient to plead around qualified immunity.

The Court notes Haley's heavy reliance on *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001). The Court previously distinguished *Lee* on its facts. *See* Order of Nov. 10, 2014, ECF 89. However, *Lee* does support Haley to the extent that it made clear long before Haley's detention that detaining an individual without taking basic steps to verify his identity may rise to the level of a constitutional violation. *See id.* at 684. As the Court noted previously, however, *Lee* turned in large part upon the fact that persons with mental disabilities often are misidentified and that the defendants failed to compare the plaintiff's fingerprints or other identifying characteristics with those of the fugitive at large, despite the plaintiff's obvious mental incapacity. *See id.* Thus although it ultimately concludes that Haley has alleged enough to go forward on her claim against Singleton, the Court finds unpersuasive Haley's assertion that *Lee* and the present case are "as close as two cases can be." *See* Pl.'s Opp. at 16, ECF 95.

The motion to dismiss Claim 3, as asserted by Haley, is DENIED as to Singleton.

### E.    Claim 4 – Violation of Right to Freedom of Association

Claim 4 asserts that the Agents' actions, which caused Haley to be arrested and detained for thirty days, violated her right to freedom of association as guaranteed by the First Amendment. In her opposition, Haley concedes that the limitations placed on her freedom of association "do not rise to the level of a constitutional violation" and that the claim should be dismissed. Accordingly, the Agents' motion is GRANTED WITHOUT LEAVE TO AMEND as to Claim 4.

### F.    Claim 5 – Violation of Bane Act

In Claim 5, Haley claims that the Agents' conduct violated her rights under the Bane Act.[6] SAC ¶ 55. A defendant is liable under the Bane Act "if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by . . . threats, intimidation, or coercion." *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 956 (2012); Cal. Civ. Code § 52.1(a).

---

[6] Haley argues that the Agents should be precluded from challenging the Bane Act claim because they did not challenge that claim in their prior Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(g)(2) (precluding a party from raising a defense or objection that could have been, but was not, raised in a prior motion). While it is true that the Agents did not challenge the Bane Act claim expressly in their prior motion, the Agents did successfully challenge all of the constitutional claims upon which the Bane Act claim is premised, and the Court *sua sponte* dismissed the Bane Act claim on that basis. *See* Order of Nov. 10, 2014, ECF 89. Under those circumstances, the Court concludes that the Agents' current challenge to the amended Bane Act claim is appropriate.

United States District Court
Northern District of California

1  Where the alleged constitutional violation is a wrongful jail detention, the plaintiff must allege

2  something more than "the coercion inherent in the wrongful detention itself." *Shoyoye*, 203 Cal.

3  App. 4th at 959.  Here, Haley does not allege any acts beyond the detention itself other that

4  Singleton's taunts that Haley was "all over" the evidence and that she was "screwed."  *See* SAC ¶

5  21.  Those allegations are insufficient to state a Bane Act claim.[7]  *See Shoyoye*, 203 Cal. App. 4th

6  at 961-62.

7  Accordingly, the motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to

8  Claim 5.

9  **IV.   ORDER**

10  For the foregoing reasons, IT IS HEREBY ORDERED that:

11  (1)   With respect to all claims asserted by Emily Wright and Jessica Wright against the

12  Agents, the motion is GRANTED WITHOUT LEAVE TO AMEND.

13  (2)   With respect to the claims asserted by Haley Wright against the Agents,

14  (a)   the motion is GRANTED WITH LEAVE TO AMEND as all *Bivens* claims

15  on the basis that Haley has failed to allege that the Agents acted in their

16  individual capacities;

17  (b)   the motion otherwise is DENIED as to Claim 2;

18  (c)   the motion is GRANTED WITHOUT LEAVE TO AMEND as to Claim 3

19  with respect to Parker, Omori, and Fernandez, and otherwise is DENIED as

20  to Claim 3 with respect to Singleton;

21  (d)   the motion is GRANTED WITHOUT LEAVE TO AMEND as to Claim 4;

22  and

23  (e)   the motion is GRANTED WITHOUT LEAVE TO AMEND as to Claim 5.

24  (3)   Plaintiffs shall file an amended pleading, on or before February 13, 2014, omitting

25  all claims that have been dismissed voluntarily by Plaintiffs or dismissed without

26

27  ───────────────

28  [7] In light of its conclusion that Haley has not alleged facts sufficient to make out a Bane Act claim, the Court declines to reach the Agents' argument that federal agents are exempt from liability under the Bane Act.

1  leave to amend by this Court, and curing the pleading defect with respect to the

2  Agents acting in their individual capacities.

3      (4)    The Agents thereafter shall answer the amended pleading.

4      (5)    Nothing in this order shall preclude the Agents from raising the defense of qualified

5  immunity in a future motion or at trial, if appropriate.

6

7  Dated:  January 26, 2015

8  BETH LABSON FREEMAN
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

11